J-A09004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.G.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.B., MOTHER | : | |
| | : | |
| | : | No. 1353 WDA 2023 |

Appeal from the Order Entered November 8, 2023
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-DP-0000410-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

CONCURRING MEMORANDUM BY NICHOLS, J.:

**FILED:  September 25, 2024**

While I concur in the result reached by the Majority authored by Judge Dubow and agree that the trial court's choice of Allegheny County as venue should be affirmed, I differ with the Majority's analysis and therefore I write separately.  First, this matter appears to present an issue of first impression concerning how to determine the residence of a newborn child for purposes of setting proper venue in a dependency proceeding.

As explained in the Majority's memorandum, the Allegheny County Office of Children, Youth, and Families (the Agency) filed an emergency petition for protective custody one day after G.G.B. (Child) was born in West Virginia.  **See** N.T., 8/18/23, at 5-7.  Because Child was born prematurely, she remained at the neonatal intensive care unit in West Virginia following her birth.  At the time of Child's birth, Child's parents both resided in Pennsylvania,

with J.B. (Mother) residing in Fayette County and R.B. (Father) residing in Allegheny County.

Prior to Child being adjudicated dependent, Mother filed a motion to transfer venue from Allegheny County to Fayette County, which the trial court denied. Mother's Mot. to Transfer Venue, 8/28/23; Trial Ct. Order, 8/30/23. Mother filed a timely notice of appeal that this Court quashed as an improper interlocutory appeal. *See Interest of G.B.*, 1193 WDA 2023, Order, 11/3/23.[1] The trial court subsequently adjudicated Child dependent on October 11, 2023. On appeal, Mother challenges the trial court's choice of venue and argues that the trial court erred in commencing dependency proceedings in Allegheny County.

The Majority memorandum construes Mother's appeal as limited to the denial of her motion to transfer venue. *See* Majority Mem. at 4. Based on this framing of the issue, the Majority applies Section 6321(c) of the Juvenile Act, regarding transfer of venue, and Pa.R.J.C.P. 1300(B), addressing change of venue, and concludes that "based on the plain language of both the Juvenile Act and the Rules of Juvenile Court Procedure, Mother did not meet her burden to demonstrate that venue should be transferred[,]" as Child has never

_____

[1] In her prior appeal, Mother complained that "[t]he trial court abused its discretion and/or erred as a matter of law by **denying Mother's request to transfer venue** to Fayette County," and contended that this was a "substantial issue of venue or jurisdiction" and, in the alternative, that delay in hearing her appeal could cause irreparable loss of an important right. *See Interest of G.B.*, 1193 WDA 2023, Mother's Response to Rule to Show Cause, 10/30/23, at 2-7 (emphasis added).

resided or been present in Fayette County. *Id.* at 5; Trial Ct. Order, 8/18/23 (finding proper venue in Allegheny County, granting the Agency legal custody of Child, and directing that upon release from the hospital Child shall be placed in the care of foster mother already caring for Child's sibling); N.T. 10/11/23, at 52 (confirming that Child was discharged directly from the hospital into foster care). Further, the Majority declines to address Mother's argument concerning the trial court's application of the "best interests of the child" standard and concludes that Mother waived that issue by failing to raise it before the trial court or include the issue in her Pa.R.A.P. 1925(b) statement. Majority Mem. at 4 n.2.

In the instant appeal, both Mother's 1925(a)(2)(i) statement of errors complained of on appeal and Mother's brief uniformly state that:

> [t]he trial court abused its discretion and/or erred as a matter of law when it adjudicated [Child] dependent pursuant to 42 Pa.C.S. § 6302(1) **when venue in Allegheny County was improper** as Mother resides in Fayette County, Mother and Father desire the matter to proceed in Fayette County, and [Child] has never been in Allegheny County.

Mother's Rule 1925(a)(2)(i) Statement, 11/10/23, and Mother's Brief at 11 (emphasis added). The trial court's opinion is framed in terms of Mother's motion to transfer venue; the reasoning contained therein, however, addresses venue at the commencement of proceedings. *See* Trial Ct. Opinion, 12/15/23, at 3-5. Further, the briefs of the Agency and Child's guardian *ad litem* (GAL) address the novel question of **choice of venue** for a newborn without an established residence, rather than the standard to decide a motion

to **transfer venue**. *See* Agency's Brief at 11-24, and GAL's Brief at 8-15. Judge Kunselman's concurring memorandum ("Kunselman Concurrence") recognizes that Mother has raised different though overlapping issues in both the prior quashed appeal and the instant appeal. Further, the Kunselman Concurrence defines the issue in this case as "whether venue to conduct a dependency adjudication hearing was proper in Allegheny County." *See* Concurring Mem. at 4. I agree with the Kunselman Concurrence that the trial court properly looked to the parents' residences to designate a residence for Child. *Id.* I disagree, however, with the conclusion of the Kunselman Concurrence that the trial court erred in considering factors other than where Mother and Father resided. *Id.* at 7. Specifically, I disagree that the trial court's consideration of additional factors was the "wrong standard" and "superfluous." *Id.*

The Kunselman Concurrence notes that neither the Juvenile Act nor the Rules of Juvenile Court Procedure define a child's "residence," and discusses the relevant case law that attempts to provide a working definition. I agree with the Kunselman Concurrence that prior decisions by this Court support the trial court's decision to initially look to the residence of the parents to determine a newborn's residence. *Id.* at 4-5 (citing *In the Interest of J.S.M.*, 514 A.2d 899 (Pa. Super. 1986); *In the Interest of T.T.*, 1657 EDA

2022, 2022 WL 17755935 (Pa. Super. filed Dec. 19, 2022) (unpublished mem.)[2]; **Petition of Wagner**, 112 A.2d 352 (Pa. 1955)).

However, when a newborn has no established residence, I disagree that venue can be decided solely by asking "where does the child reside" and "where is the child present," as directed by The Juvenile Act's provisions regarding "Commencement of proceedings," without further inquiry. 42 Pa.C.S. § 6321(b). **See** Concurring Mem. at 7. Here, the answer to these questions, with the residences of Mother and Father standing in as putative residences for Child, are simply Allegheny County and Fayette County, with no effective distinction between them. Following the suggestion of the Kunselman Concurrence, the trial court must choose venue to commence proceedings between facially equivalent options while prohibited from considering relevant factors to distinguish them.

Prior to entry of a dependency order, the trial court has a duty to undertake a "comprehensive inquiry into whether proper parental care is immediately available or what type of care [a parent] could provide in the future." **In the Interest of R.W.J.**, 826 A.2d 10, 14, 16 (Pa. Super. 2003) (appeal of mother from order adjudicating child dependent, where the trial court properly considered mother's parenting of her other children as a prognostic factor) (citation omitted). A central purpose of dependency

---

[2] **See** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

proceedings pursuant to the Juvenile Act is **"[t]o provide for the care, protection, safety and wholesome mental and physical development of children** coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1) (emphasis added). "Pennsylvania law makes clear that a finding of dependency can be made on the basis of prognostic evidence[.]" ***R.W.J.***, 826 A.2d at 14 (citation omitted). We also allow our "experienced juvenile court judge[s] to apply [their] training and compassion to the unique facts of each case." ***Id.*** at 15 (quoting ***Matter of DeSavage***, 360 A.2d 237, 242 (Pa. Super. 1976)). We allow consideration of prognostic evidence because to ignore such factors can result in "consequences to the child [that] could be seriously detrimental or even fatal[,]" a result antithetical to the purposes of the Juvenile Act. ***Id.*** (citation omitted). The question here is what factors may the trial court consider in choosing venue to commence proceedings for a newborn without an established residence, when such venue is disputed.

To answer this question it is useful to consider ***T.T.***, in which this Court permitted consideration of factors beyond the residences of the parents when reviewing a case addressing venue in a pre-adjudication posture. ***See T.T.***, 2022 WL 17755935. In ***T.T.***, a non-parent filed a private dependency petition, and the child's parents immediately petitioned to intervene and transfer venue prior to the entry of a dependency order. ***Id.*** at *2, *3 n.8. Similarly, here, the Agency filed a dependency petition for Child and Mother promptly moved to transfer venue prior to entry of a dependency order. In deciding the pre-adjudication transfer of venue motion, the ***T.T.*** Court relied on ***In re G.B.***,

530 A.2d 496 (Pa. Super. 1987), to conclude that it was appropriate for the trial court to inquire "where venue properly lies **and** where [the child's] best interests can best be served[;]" that is, prior to an adjudication of dependency, it was appropriate for the trial court to consider mental health treatment options for the child in the competing venues, as the child had attempted suicide at a young age. *Id.* at *1 n.3, *4 (emphasis original). The *T.T.* Court also noted that recent amendments to the Juvenile Act "make clear that the health and safety of the child supersede all other considerations." *Id.* at *4.

The difference between *T.T.* and the instant matter is that the child in *T.T.* had already resided in the two counties under consideration as venue options when the dependency petition was filed, whereas here Child had not established a residence in any venue. *Compare id.* at *1, *4 *with* N.T. 8/18/23 at 6, 12. The position set forth in the Kunselman Concurrence seems to focus on *T.T.*'s procedural posture as a transfer motion, that is, that a best interest query was appropriate in *T.T.* pursuant to Pa.R.J.C.P. 1302(A), which mandates that intercounty transfer motions be reviewed under a best interest standard. It is important to recognize, however, when providing guidance to the trial court here, that *T.T.* addressed venue in **a pre-adjudication** posture, even though Rule 1302(A) provides for application of the "best interest of the child" considerations "[a]ny time **after** the adjudicatory hearing[.]" Pa.R.J.C.P. 1302(A) (emphasis added); *see also T.T.*, 2022 WL

17755935, at *2, n.8. That is, the **T.T.** Court allowed the best interest of the child to be considered prior to an adjudication of dependency.

Contrary to the fact-specific approach in the pre-adjudication matter in **T.T.**, the Kunselman Concurrence finds that the trial court here should only consider the location of parents' current residences as factors in setting venue. **Compare** Concurring Mem. at 5-6 (finding only that "a newborn resides where the parents reside") **with** Mother's Brief at 24-25 (the trial court should take into account parents' intent or settled purpose with regard to residence in identifying Child's residence), Appellee's Brief at 18-24 (in setting venue, the trial court should be permitted to take into account that Allegheny County is better positioned to care for Child), and GAL's Brief at 12-15 (the trial court should be permitted to take into account the timeliness and quality of dependency services available to Child and Child's family in the different venues). Further, in avoiding the "best interest of the child" standard, the Kunselman Concurrence would bar consideration of such factors as: that Child has a sibling already in the care of the Agency, that the Agency is familiar with and currently providing services to Child's parents and addressing the needs of the family unit, or that transfer to a different county would cause a delay in providing services to Child. **Compare** Concurring Mem. at 7 **with** N.T., 8/18/23, at 8, 23-24. If the trial court is barred from examining parents' intentions or desires with regard to these residences or taking into account other fundamental facts in the record that affect Child's immediate and future

welfare and safety, I do not see how an appropriate choice can be made between these two facially equivalent options to set venue.

As the Juvenile Act provides an overarching directive to "provide for the care, protection[,] and safety" of Child, the trial court should have the means to achieve this goal. 42 Pa.C.S. § 6301(b)(1.1). Here, this involves allowing consideration of factors likely to impact the care, protection, and safety of Child. We need not explicitly adopt a "best interest of the child" standard of review in order to provide direction for the trial court here.[3] Instantly, the record supports the trial court's finding that setting and sustaining venue in Allegheny County was proper in that this county is where the care, protection, and safety interests of Child, as a newborn, can best be served in the pending dependency proceedings. Accordingly, the trial court acted appropriately within its discretion in considering the relevant factors to support its decision to commence dependency proceedings in Allegheny County and denying Mother's motion to transfer venue to Fayette County. *See* 42 Pa.C.S. § 6301(b)(1.1); *R.W.J.*, 826 A.2d at 14-16; *G.B.,* 530 A.2d at 499; *T.T.*, 2022 WL 17755935, at *2.

---

[3] The Kunselman Concurrence mistakenly characterizes my position as an endorsement of the "best interest of the child" standard of review to decide venue. It is not.

For these reasons, I concur in the decision of the Majority to affirm the trial court's orders adjudicating Child dependent[4] and denying Mother's motion to transfer of venue to Fayette County.

---

[4] The trial court's order granting DHS's shelter care petition set venue in Allegheny County, and by affirming the dependency order this Court implicitly affirms the shelter care order which set venue.